# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>VICTOR MANUEL RAYA-VACA,<br><br>                    Defendant. | CASE NO. 12-CR-5261-IEG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INFORMATION**<br><br>[Doc. No. 12] |

Presently before the Court is Defendant Victor Manuel Raya-Vaca's ("Defendant") motion to dismiss the information under § 1326(d). [Doc. No. 12, Def.'s Mot.]  For the following reasons, the Court **DENIES** the motion.

## BACKGROUND

Defendant alleges the following facts in his motion.  Defendant first came to the United States twenty-five years ago when he was approximately six years old. [Doc. No. 12, Def.'s Mot. at 1-2.]  He states that he has a common law wife who is a U.S. citizen, with whom he had lived for seven years, and two U.S. citizen children. [Id. at 2.]  Defendant states that since 2009, he has been the subject of two orders of removal:  a stipulated order of removal in 2009 and an expedited order of removal in 2011.

Because the Government in its opposition states that it "will not seek to satisfy the prior removal element of § 1326 offense [sic] by producing evidence of the 2009 Stipulated Removal Order" [Doc. No. 14, Govt.'s Opp. at 2 n.1], the Court does not address the facts and arguments

related to the 2009 removal order.

Defendant alleges that in July 2011, he was the subject of expedited removal proceedings under 8 U.S.C. § 1225. [Doc. No. 12-1, Def.'s Mot. at 4.] He was interviewed by Border Patrol Agent Alberto Baca ("Agent Baca") on July 25, 2011. [Id.] Agent Baca charged Defendant with being inadmissible and removable from the United States, and subsequently ordered Defendant removed from the United States on July 25, 2011. [Id. at 4-5] Defendant alleges that "[d]uring this proceeding, noone [sic] explained to [Defendant] what was happening other than that he would be taken back to Mexico." [Id. at 4] He also alleges that he "was not advised of his right to consult with an attorney or his right to seek to withdraw his application for admission." [Id.] Defendant further alleges that he initialed and signed the forms that Agent Baca prepared, but was not given the opportunity to read these documents or his sworn statement, and that the forms indicate that Defendant was also not given the opportunity to read all of the pages of his sworn statement. [Id.] In the Notice and Order of Expedited Removal, Agent Baca asserted that Defendant illegally entered the United States without inspection near Tecate, California on July 24, 2011, and that he was removable under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) (8 U.S.C. § 1182(a)(7)(A)(i)(I)), as an alien who, at the time of his application for admission, was not in possession of a valid entry document. [Id. at 4-5.]

The Government presents the following information regarding Defendant's criminal history in its opposition brief. On February 2, 2003, Defendant was convicted of misdemeanor burglary in violation of California Penal Code § 459 and sentenced to ten days in jail and three years of probation. [Doc. No. 14, Govt.'s Opp. at 2-3.] On September 23, 2010, Defendant was convicted of Obstruction of a Police Officer in violation of Penal Code § 148(a)(1) and False Identification to a Police Officer in violation of Penal Code § 148.9(a). For these offenses, Defendant was sentenced to three days in jail and three years probation. [Id. at 3.]

The Government also states in its opposition brief that at the time of Defendant's expedited removal order in 2011, Defendant "had been apprehended and removed from the United States on six prior occasions: March 03, 2009; May 29, 2009; June 16, 2009; September 20, 2009; November 11, 2009; and September 21, 2010." [Id.] The Government states that on three of these

1  occasions, Defendant "had been identified as a 'foot-guide' guiding aliens through the mountains
2  as they made their way into the United States." [Id at 3-4; Doc. No. 14-1, Ex. at 4.]

## DISCUSSION

### I. Collateral Attack on a Removal Order

Because the underlying removal order serves as a predicate element of 8 U.S.C. § 1326, a defendant may collaterally attack the removal order under the due process clause. United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006). In order to succeed in collaterally attacking an order of deportation under 8 U.S.C. § 1326, a defendant must demonstrate that: (1) "the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

The Court first addresses the issue of fundamental unfairness. A removal order is "fundamentally unfair" if (a) the deportation proceedings violated the alien's due process rights and (b) the alien suffered prejudice as a result. United States v. Arias-Ordonez, 597 F.3d 972, 976 (9th Cir. 2010).

### A. Violation of Due Process Rights

Defendant generally argues that his 2011 removal is invalid because his due process rights were violated in three different ways: (1) his Fifth Amendment right to counsel was violated when Agent Baca did not inform him of his right to consult with a lawyer and did not offer him the opportunity to do so; (2) immigration officials violated their own agency regulations when they failed to inform Defendant of the charges against him, and when they failed to read Form I-867A (sworn statement prepared by Agent Baca) and Form I-867B (jurat of sworn statement) to Defendant or to allow him to read them in their entirety; and (3) immigration officials violated rights afforded to Defendant by statute and regulation when they failed to advise him of his right to seek withdrawal of his application for admission. [Doc. No. 12, Def.'s Mot. at 5-7.] The Government did not present any factual evidence to the contrary; therefore, the Court assumes that there was a violation of Defendant's due process rights, and considers whether Defendant suffered

prejudice.

### B. Prejudice

"To establish prejudice, [a defendant] does not have to show that he actually would have been granted relief. Instead, he must only show that he had a plausible ground for relief from deportation." Ubaldo-Figueroa, 364 F.3d at 1050 (internal quotation marks omitted). A defendant can show that he suffered prejudice if he "was removed when he should not have been." Camacho-Lopez, 450 F.3d at 930. "Where the relevant form of relief is discretionary, the alien must make a plausible showing that the facts presented would cause the Attorney General to exercise discretion in his favor." Barajas-Alvarado, 655 F.3d at 1089. "[E]stablishing 'plausibility' requires more than establishing a mere 'possibility." Id. Once the defendant makes a prima facie showing that he had a plausible ground for relief, the burden shifts to the government to "demonstrate that the procedural violation *could not have* changed the proceedings' outcome." United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added). Defendant first argues that because he suffered the violation of a Constitutional right to counsel, "prejudice is inherent and need not be shown." [Doc. No. 12, Def.'s Mot. at 19-22.] The Court declines to find that prejudice is inherent and need not be shown because the Ninth Circuit has not yet adopted this position, which Defendant readily admits. See Biwot v. Gonzales, 403 F.3d 1094, 1100 (9th Cir. 2005) ("[W]e again leave unanswered the question whether a petitioner must show prejudice when he has been denied the right to counsel in removal proceedings."). [Doc. No. 12, Def.'s Mot. at 20.]

Defendant also argues that if he must show prejudice, that he is "more than able to demonstrate 'plausible grounds' for receiving the opportunity to withdraw his application for admission." [Id. at 7.] He argues that the factors enumerated in the Inspector's Field Manual ("Field Manual"), and relied upon by the Ninth Circuit in United States v. Barajas-Alvarado, 655 F.3d 1077 (9th Cir. 2011), demonstrate that "the equities in this case show plausible grounds for a positive exercise of discretion." [Doc. No. 12, Def.'s Mot. at 7.]

"Although an arriving alien may ask to withdraw an application for admission, the grant of such relief is discretionary." Barajas-Alvarado, 655 F.3d at 1089; see 8 C.F.R. § 1235.4. Because

withdrawal is discretionary, Defendant must make a plausible showing that the facts presented would have resulted in an exercise of discretion in his favor. See Barajas-Alvarado, 655 F.3d at 1089.

Withdrawal was available to aliens prior to IIRIRA. Both immigration judges ("IJs") and immigration officers had the authority to permit an alien to withdraw an application, which was recognized in case law. See, e.g., Gutierrez, 19 I. & N. Dec. 562 (B.I.A. 1988). After Congress enacted IIRIRA, it codified withdrawal of an application for admission in § 1225(a)(4),[1] and the agency developed regulations authorizing immigration officers to permit aliens to withdraw their applications for admission, as an alternative to removal proceedings or expedited removal. Barajas-Alvarado, 655 F.3d at 1089-90 (citing 8 C.F.R. § 1235.4).

The statute and regulations provide little guidance on when discretion should be exercised. However, the agency prepared an internal document, an Inspector's Field Manual, which "guides the immigration officers' discretion and therefore gives us insight regarding whether it is plausible that an immigration officer would have granted [an alien's] request for withdrawal." Barajas-Alvarado, 655 F.3d at 1090 & n.16. The Field Manual directs inspecting officers to "reach an equitable decision" "based on a careful balancing of relevant favorable and unfavorable factors." CBP Inspector's Field Manual § 17.2 (revised 12/22/97[2]), available at Lexis 14-1 Agency Manuals 17.2.

The Government argues that rather than balancing the factors, the Court should consider whether Defendant can make a plausible showing that he would have been permitted to withdraw his application for admission under the "interest of justice standard" from Gutierrez, 19 I. & N. Dec. 562. However, the Government does not fully develop its argument. The Government only states that Gutierrez presented a higher standard on whether an alien may be permitted to withdraw

---

[1] This subsection provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4).

[2] It appears that the most recent publicly available version of § 17.2 of the Field Manual was revised on December 22, 1997. See CBP Inspector's Field Manual § 17.2, available at Lexis 14-1 Agency Manuals 17.2. This version was therefore presumably the same version that the Barajas-Alvarado Court analyzed when reaching its decision.

an application for admission.  [Doc. No. 14, Govt.'s Opp. at 6-7.]  The Government does not present how Gutierrez should be applied in the present case.

Although the Government argues that the Court should use the Gutierrez standard to the exclusion of balancing favorable and unfavorable factors, the Court declines to adopt this position for two reasons.  First, the language from Gutierrez upon which the Government argues the Court should rely appears in the Field Manual, but is followed by the factors.  Gutierrez states that an IJ should not allow withdrawal unless "granting withdrawal would be in the *interest of justice* (i.e., that *justice would be ill served* if an order of exclusion was entered)."  Gutierrez, 19 I. & N. Dec. at 565 (emphasis added).  Similarly, the Field Manual states that an inspecting officer "should carefully consider all facts and circumstances . . . to determine whether permitting withdrawal would be in the *best interest of justice*, or conversely, that *justice would be ill-served* if an order of removal were issued."  CBP Inspector's Field Manual § 17.2, available at Lexis 14-1 Agency Manuals 17.2 (emphasis added).  The Field Manual continues, and advises an inspecting officer to consider favorable and unfavorable factors to make his or her decision.

Second, the Ninth Circuit has not explicitly decided whether Gutierrez is relevant in the context of an immigration officer's exercise of discretion.  Barajas-Alvarado, 655 F.3d at 1090.  Instead, the Ninth Circuit has stated that immigration officers and IJs are guided by different considerations to determine whether an alien may withdraw his application for admission.  Immigration officers use the Field Manual and 8 C.F.R. § 1235.4.  IJs, on the other hand, are guided by a different regulation than immigration officers and do not use the Field Manual.  United States v. Cisneros-Resendiz, 656 F.3d 1015, 1020 & n.9 (9th Cir. 2011).  Because Gutierrez provided guidance to IJs rather than to immigration officers, and because it predates IIRIRA and the applicable regulations, the Court will not apply the Gutierrez standard to the exclusion of balancing the favorable and unfavorable factors.

The Field Manual outlines six factors that an immigration officer should consider when evaluating whether an alien's request to withdraw his application for admission is in the best interest of justice:  (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to

easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations.  Id. at 1090.

### 1. Seriousness of the Immigration Violation

The Ninth Circuit found that where an alien was subject to two prior expedited removal orders, his subsequent illegal entry into the United States was a serious immigration violation. See Barajas-Alvarado, 655 F.3d at 1090.

Here, Defendant has illegally entered the United States on six prior occasions. [Doc. No. 14, Govt.'s Opp. at 7.]  On three of those occasions, he was identified as a guiding aliens into the United States [Id. at 8], although he was not identified as a guide in the most recent entry giving rise to the expedited removal proceedings.  [Doc. No. 14-1, Record of Deportable/Inadmissible Alien at 1-5.]  Defendant argues that the Government has only presented vague statements by material witnesses that do not conclusively establish Defendant's role as a foot guide.  [Doc. No. 15, Def.'s Reply at 10-11; see Doc. No. 14-1, Record of Deportable/Inadmissible Alien at 15-16.] Even if the Court does not consider Defendant's alleged role as a guide, the Court still finds that his 2011 entry was a serious immigration violation due to his previous entries.

Defendant, however, argued at oral argument that the field agent must look at the immigration violation in front of him or her, and should not consider past violations.  Defendant further argues that Defendant's entry is non-aggravated as it did not involve violence or fraudulent documents.  However, the Ninth Circuit has considered prior entries when it held that the illegal entry of an alien with previous removal orders entered against him was a serious immigration violation.  See Barajas-Alvarado, 655 F.3d at 1090.  Therefore, in light of Defendant's multiple prior illegal entries, his 2011 illegal entry was a serious immigration violation.

### 2. Previous Findings of Inadmissibility against the Alien

The Ninth Circuit has found that prior expedited removal orders constitute previous findings of inadmissibility.  See Barajas-Alvarado, 655 F.3d at 1090.

The Government argues that Defendant had six prior immigration arrests at the time of his expedited removal.  However, immigration arrests, standing alone, do not necessarily equate to a formal finding of inadmissibility.

1  Defendant has one prior stipulated order of removal. However, Defendant argues that he
2  "ha[s] no prior findings of inadmissibility, as the stipulated order of removal, due to the nature of
3  its invalidity, cannot constitute a prior finding of inadmissibility." [Doc. No. 12, Def.'s Mot. at
4  24.] However, an inspecting officer considering whether Defendant should be permitted to
5  withdraw his application would have no means of knowing that the prior stipulated order of
6  removal allegedly violated Defendant's due process rights. Therefore, an inspecting officer likely
7  would have found this factor does not support Defendant because he has one prior finding of
8  inadmissibility against him.

### 3.     Intent on the Part of the Alien to Violate the Law

10  The Government argues that "[Defendant]'s intent is more aggravated than others because
11  he had been through the stipulated removal proceedings and was warned of the consequences of
12  future illegal entry." [Doc. No. 14, Govt.'s Opp. at 8.] Defendant argues that because he did not
13  present false documents or make false claims, there is nothing in the record to indicate that
14  Defendant harbored the intent to violate the law. [Doc. No. 15, Def.'s Reply at 12.] Although
15  Defendant did not use fraudulent documents to enter the United States, his prior history of illegal
16  entries into the United States suggest an intent to violate the law by entering the United States
17  without permission.

### 4.     Ability to Easily Overcome the Ground of Inadmissibility

19  Defendant was found inadmissible as an "an immigrant not in possession of a valid [entry
20  document]." [Doc. No. 12-2, Determination of Inadmissibility at 23.] Defendant argues that he
21  "would be eligible to apply for legal permanent residency in the United States in the future, on the
22  basis of either his marriage to his partner, . . . or his U.S. citizen brother. [Doc. No. 12, Def.'s Mot.
23  at 24.] At oral argument, Defendant argued that his application for permanent residency would be
24  approved more quickly relative to aliens who did not have U.S. citizen relatives. However,
25  Defendant is not currently married to a U.S. citizen. Therefore, because any relief would be
26  sometime in the future and uncertain, Defendant cannot "easily" overcome his ground of
27  admissibility.
28  The Government also argues that Defendant's two criminal convictions "could have been

1  crimes involving moral turpitude." [Doc. No. 14, Govt.'s Opp. at 8.]  However, this is not the

2  ground of inadmissibility cited by the government in its Determination of Inadmissibility.  [See

3  Doc. No. 12-2, Determination of Inadmissibility at 23.]  Rather, the ground of inadmissibility was

4  being "an immigrant not in possession of a valid [entry document]."  [Id.]  Therefore, the Court

5  need not consider whether Defendant would have been able to overcome a finding of

6  inadmissibility based on moral turpitude.  Defendant also lists two other potential grounds of

7  inadmissibility [Doc. No. 14, Govt.'s Opp. at 9-10], which also the Court declines to consider as

8  they were not listed in Defendant's Determination of Inadmissibility.

### 5. Age or Poor Health of the Alien

10  The Ninth Circuit held that an alien's age did not support withdrawal of his application

11  when he was thirty-five years old at the time of his most recent expedited removal.  See Barajas-

12  Alvarado, 655 F.3d at 1090.  Based on the information presented in Defendant's motion that he

13  arrived in the United States when he was approximately six years old, and that he first came to the

14  United States twenty-five years ago [Doc. No. 12, Def.'s Mot. at 1-2], Defendant was likely about

15  twenty-nine or thirty years old at the time of his removal in 2011.  In addition, Defendant does not

16  allege that he is in poor health.  Given the Ninth Circuit's holding in Barajas-Alvarado and

17  Defendant's lack of allegations that he is in poor health, this factor does not support Defendant's

18  argument.

### 6. Other Humanitarian or Public Interest Considerations

20  Defendant cites his U.S. citizen family members, including his common law wife, two

21  young children, and brother as public interest considerations weighing in his favor.  [Doc. No. 12,

22  Def.'s Mot. at 24.]  He also has several non-U.S. citizen family members residing in the United

23  States.  [Id.]  He argues that "preservation of family unity and the hardship occasioned by requiring

24  his U.S. citizen partner and children, who have never been to Mexico, to move there permanently"

25  present public interest considerations that support him.  [Id.]  He also states that he "had been

26  living in the United States for an extended period of time and [can] demonstrate consistent

27  employment and community ties."  [Id.]

28  Although the Government argues that "[t]here is nothing about [Defendant]'s situation that

1 would weigh positively in his favor under this factor" [Doc. No. 14, Govt.'s Opp. at 11],
2 Defendant's family ties and connection to the United States are positive equities.
3      Despite this positive factor, on balance, the factors taken together do not demonstrate
4 plausible grounds that discretion would have been exercised in Defendant's favor.  In light of his
5 previous illegal entries and inability to easily overcome the ground of inadmissibility, it is not
6 plausible that an inspecting agent would have found that permitting Defendant to withdraw his
7 application for admission would be in the best interest of justice.  See CBP Inspector's Field
8 Manual § 17.2, available at Lexis 14-1 Agency Manuals 17.2.  Accordingly, because Defendant is
9 not able to demonstrate plausible grounds for being granted the opportunity to withdraw his
10 application for admission, he is unable to show prejudice.

## CONCLUSION

For the reasons above, the Court **DENIES** Defendant's motion to dismiss the information.

**IT IS SO ORDERED.**

**DATED:** February 27, 2013

**IRMA E. GONZALEZ**
**United States District Judge**